ELLIS, Judge.
This suit seeks the recovery of a balance allegedly due by the defendant on the premium of a fleet insurance policy. Originally an appeal herein was dismissed since an order of appeal was issued before judgment was signed. See La.App., 83 So.2d 671. Proper appeal was taken from a judgment of the lower Court sustaining an exception of no cause and no right of action when this Court remanded the cause for trial upon the merits. See 88 So.2d 724. This trial resulted in a judgment in favor of the defendant and the plaintiff has appealed.
The policy forming the basis of this suit was obtained under the Louisiana Assigned Risk Plan through which sub-standard risks can be covered at rates especially fixed by the Casualty and Surety Insurance Division of the Louisiana Rating Commission. See LSA-R.S. 22:1401 et seq.
In order to obtain coverage through this plan the insured must execute an application in which he agrees to be governed by the rules of the Commission appertaining to assigned risks. The policy so provides.
Attached to and forming part of the agreement or contract between the parties is an “Automatic Coverage Endorsement.” Under its terms the insurer provided liabil *921 ity coverage “to all automobiles acquired by the Insured during the Policy period and used for business purposes”, as well as to the fleet of motor vehicles owned by defendant insured at the time the policy was issued. This endorsement further provided that the defendant insured must maintain a record of additions to and deletions from the fleet of automobiles insured, and that for the “Premium”: “The insured shall pay premiums computed on the amount of liability under such Policy at its inception date and the Company shall annually thereafter ■compute the amount of premium earned at the end of such period. Full settlement of the net amount of additional or return premium shown to be due at the end of •each such period shall be immediately due and payable.”
In holding the plaintiff was entitled to a trial upon the merits, 88 So.2d 727, we decided such a policy provision valid, citing American Employers’ Insurance Co. v. .Furr, La.App., 5 So.2d 343.
Accordingly, an audit of the defendant’s insurance account was made and on November 13, 19S3, about 4 months after the policy expired, the plaintiff rendered an invoice to the defendant showing an additional premium due of $488.14, the amount .sought to be recovered in this suit.
The reason for the additional charge was that the original rule of the Louisiana Assigned Risk Plan is that policies issued thereunder must bear a flat additional charge of 25%. When the policy was originally issued such a charge was made. When the experience record of the insured was received by the Louisiana Rating Commission, which was after the policy was issued, it assessed to the defendant an additional 60% surcharge. The defendant was so notified and this last charge is shown in an endorsement added to the policy and which of course was retroactive to its effective date. The Rating Commission made no mention of the 25% charge and when the plaintiff assessed the 60% additional charge it entered a rebate of the 25% charge, being under the impression the last surcharge replaced the original flat surcharge of 25%. Before the final premium was determined by the audit the Louisiana Rating Commission notified the plaintiff it had in no way removed or waived the original flat 25% surcharge; that the 60% surcharge was in addition to the 25%.
Upon the trial of the case on the merits the defendant objected to the introduction of any evidence as to any premium due other than as is stipulated in an endorsement upon the policy made about September 5, 1952, when the plaintiff rebated the flat 25% surcharge, and which endorsement reads as follows:
“It is agreed that a 60% debit has been promulgated on this risk. The 25% additional surcharge is hereby eliminated and a 60%. debit applies to contract. This entails additional premiums of $229.02 bodily injury, and $222.-90 property damage.
“On account of the foregoing, the additional premium is $451.92.”
The defendant maintains such evidence would enlarge the pleadings and the trial Court sustained his objection allowing the evidence to be taken subject to it.
It is further maintained by the defendant that if an error was made the plaintiff would have to bring a suit to reform, amend or change the policy and plead error; that under the pleadings it could not introduce evidence as to the erroneous charge.
The plaintiff contends the allegations of its petition are broad enough to permit proof of the true and legal applicable premium rate assessed by the Louisiana Rating Commission. And further, that the defendant admitted in his answer “that a purported audit shows a balance due of $488.-14, which said balance is due solely and entirely to an increase in the premium rate charged defendant after the 'expiration date of the policy and without any knowledge or *922 consent on the part of the defendant whatsoever.”
There is an 'article in the petition referring to the endorsement quoted hereinabove providing the premium was to be computed from an audit of the books of the insured by the Insurance Company and that the actual earned premium should thereafter be computed at the end of each annual period and that full settlement of the net amount of the additional or return premium shown to be due at the end of such period shall be immediately then due and payable. This endorsement was made part of plaintiff’s petition.
Since the insured agreed the final premium due was to be determined by the audit it seems the petition and the policy itself and its endorsement, all of which were made part of the petition, are broad enough to allow the introduction of evidence as to the correctness of the audit. This audit reconciled all possible charges and credits as it was intended to do. The defendant has never questioned the correctness of the audit but is attempting to defeat its payment on the basis that an incorrect credit advance would not be allowed to be corrected under the pleadings. The very nature of this type of agreement,is to finally, after audit, determine the actual premium due and to allow refunds or additional premiums. If the defendant desired any further information than the petition, the policy and the endorsements, he could have interposed an exception of vagueness. However, we believe the pleadings broad enough to allow the introduction of evidence concerning the audit, its correctness and an explanation of the erroneous credit given. Of course the rates on this policy were fixed by the Louisiana Rating Commission, and neither the insured nor the insurer can change them.
The plaintiff prays for legal interest on the amount of premium shown to be due by the audit, demanding this interest from the date of the invoice, which was November 13, 1953. The “Automatic Coverage Endorsement” quoted hereinabove, provides, “Full settlement of the net amount of additional or return premium shown to be due at the end of each such period shall be immediately then -due and payable.” Article 554 of the Louisiana Code of Practice states that “Interest at the rate of five per cent shall be allowed on all debts from the time they become due, unless otherwise stipulated.”
Under the policy there is a stipulation between the parties that any amount due either became due and payable upon the completion of the audit and thus the invoice of November 13, 1953, is the due date and plaintiff is entitled to legal interest.
For the reasons alleged the judgment of the District Court is reversed and there is judgment herein in favor of the plaintiff and against the defendant in the full sum of $488.14 together with legal interest thereon from November 13, 1953 and all costs.